UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TROY HARRIS,

       Petitioner,        00 Cr. 105 (RPP)
 - against -              04 Civ. 1113 (RPP)

                 **OPINION AND ORDER**

UNITED STATES OF AMERICA,

       Respondent.
------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

  Pro se petitioner, Troy Harris ("Harris"), presently in custody and subject to a sentence imposed by this Court, seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the ground that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. Harris also moves for an order requiring "all entities participating in the above captioned matter to prove their corporate existence, solvency, and capacity to sue or be sued according to Federal Rule of Civil Procedure 9(a)." Harris's petition and motion are denied for the reasons set forth below.

**BACKGROUND**

  On April 8, 2000, a grand jury returned Indictment 00 Cr. 105, which charged Harris, his brother Tracy Harris, and 12 co-defendants with conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine and 50 grams and more of "crack," in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846.

  On September 22, 2000, Harris pled guilty to the Indictment pursuant to a plea

agreement with the Government.[1] In the plea agreement, Harris and the Government stipulated that the offense involved Harris's distribution of 1.5 kilograms and more of crack, which resulted in a base offense level of 38, pursuant to Section 2D1.1(c)(3) of the United States Sentencing Guidelines ("U.S.S.G."). (Plea Agreement ("Plea Agmt."), dated Sept. 21, 2000, at 3.) The parties stipulated to a two-level adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), and agreed that Harris could move for a reduction of an additional point, pursuant to U.S.S.G. § 3E1.1(b)(2). (Plea Agmt. at 3.) Harris and the Government agreed that Harris had a Criminal History Category of II, and that if his motion under U.S.S.G. § 3E1.1(b)(2) was granted, his Stipulated Guidelines range was 188 months to 262 months. (Plea Agmt. at 4.)

In consideration for Harris's plea, the Government agreed not to file a Prior Felony Information, pursuant to 21 U.S.C. § 851, in connection with Harris's prior narcotics felony conviction, which would have increased his minimum sentence to 20 years. (Plea Agmt. at 3.) Harris agreed that he would not appeal or otherwise litigate under 28 U.S.C. § 2255 any sentence within or below the Stipulated Guidelines range of 188 to 262 months. (Plea Agmt. at 5-6.)

---

[1] The Court accepted Harris's plea of guilty following a plea allocution conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure. At the plea hearing, Harris stated that he was 31 years old and had completed two years of college, that he had not been treated for mental illness or addiction to alcohol or narcotic drugs, and that had not used drugs or had any alcohol within the previous two days. (Transcript of Sept. 22, 2000 Plea Hearing ("Plea Tr.") at 2-3.) The Court also determined that Harris had read the Indictment and plea agreement and discussed both documents fully with his counsel, that no threats or promises had been made to induce him to plead guilty, and that he was fully satisfied with the representation and legal advice given to him by his counsel. (Id. at 3-4.) The Court ultimately found that "the defendant [is] fully competent and capable of entering an informed plea, that his plea of guilty to the indictment is a knowing and voluntary plea, supported by an independent basis in fact containing each of the essential elements of the offense." (Id. at 15.)

On February 8, 2001, in accordance with the plea agreement, this Court sentenced Harris to 188 months in prison. The Court also imposed a 5-year term of supervised release and a mandatory $100 special assessment. Shortly thereafter, Harris filed a notice of appeal. The Government moved for summary affirmance, arguing that Harris did not have any non-frivolous claims on appeal. The Second Circuit affirmed Harris's conviction and sentence in a summary order dated December 23, 2002. Harris did not seek a writ of certiorari from the Supreme Court.

Harris, proceeding pro se, has petitioned this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In his petition, Harris asserts three separate grounds for relief based on ineffective assistance of counsel in violation of the Sixth Amendment. Harris contends that his counsel at trial and on appeal rendered ineffective assistance because (1) "the Sentencing Guidelines do not permit the district court to hold petitioner responsible for a specific quantity of drugs unless the court can conclude that petitioner was responsible for a quantity greater than or equal to[] the quantity for which the petitioner is being held responsible for" (Harris's Memorandum of Law in Support of § 2255 Petition ("Harris Mem.") at 1); (2) counsel did not request a downward departure based on Harris's "extraordinary family circumstances" (Id.); and (3) counsel did not request a downward departure based on Harris's "mental, emotional, and physical condition because of petitioner's extraordinary situation faced by petitioner as a baby and youth" (Id.). In a subsequent filing, Harris argues that his counsel rendered ineffective assistance because she failed to contest the district court's jurisdiction over him. (Harris's Supplemental Amended Brief ("Harris Supp. Br.") at 21-28.) Lastly, Harris filed a motion on September 3, 2004, in which he requests that "all entities participating

in the above-captioned matter provide the adverse party with copies of their limited liability bonds underwriting, their corporations, their insurance policies, and home owners insurance policies as proof of their solvency and capacity to sue or be sued," pursuant to Rule 9(a) of the Federal Rules of Civil Procedure. (Harris's Rule 9(a) Motion at first unnumbered page.)

The Government filed a Memorandum of Law in opposition to Harris's petition on January 6, 2004 and a letter on October 18, 2004, in which it contends that Harris's claims are without merit and should be denied without a hearing.

## DISCUSSION

### I.  Standard of Review

In reviewing the instant petition, this Court is mindful that Harris has proceeded pro se in submitting his petition and brief. For this reason, Harris's submissions will be "liberally construed in his favor," Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and read "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted).

Section 2255 of Title 28 of the United States Code ("Section 2255") provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

## II. Harris's Ineffective Assistance of Counsel Claims

To establish a claim for ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance was deficient if it "fell below an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

In addition to demonstrating an unreasonable error by counsel, a petitioner must show that the deficiency in counsel's performance had an effect on the result; that is, that the error was prejudicial to the petitioner. See Strickland, 466 U.S. at 691-96. A petitioner demonstrates prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687, 694.

### A. Counsel Coerced Harris into Entering the Plea Agreement

Harris first claims that his counsel "coerced" and manipulated him into involuntarily pleading to distribution of 1.5 kilograms of crack cocaine by threatening that he would not receive a plea agreement if he did not plead to the 1.5 kilograms. (Harris Mem. at 3-10.) Harris further contends that his counsel's deficient performance was prejudicial and ineffective because she "allow[ed] the Petitioner to be unconstitutionally enhanced to a 6 level enhancement for a drug amount that really never

5

existed, causing the Petitioner to be sentenced 67 months more than he should have been." (Id. at 9-10.)

Harris's claim of coercion by his counsel does not in fact amount to coercion. Harris states that his counsel threatened that he would not be given a plea agreement at all if he did not plead to the 1.5 kilograms of "crack." (Id. at 5.) However, in view of the fact that the Government made the plea offer to counsel on the eve of trial, counsel did nothing other than repeat the Government's terms when she made such a statement. Harris could have chosen to enter his plea without the benefits of a plea agreement or he could have proceeded to trial. In either event, the Government could have filed a Prior Felony Information, which would have increased Harris's mandatory minimum term of imprisonment from ten years to twenty years.

Furthermore, Harris's claim cannot satisfy the first prong of the Strickland test because it is conclusory and contradicts his sworn statements at the plea allocution. See United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (stating that a defendant's testimony at his plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made").

In his plea allocution, Harris affirmed on the record that he was fully satisfied with his attorney and the representation and legal advice she had given him. (Plea Tr. at 3.) He acknowledged that he had read the plea agreement and entered into it freely and voluntarily, he had discussed everything in it with his attorney, she had explained to him anything in it that he did not understand, and no one had threatened him or made any

6

promises to him in order to convince him to enter the agreement. (Id. at 3-4.) In the course of pleading guilty to conspiracy to distribute and possession with intent to distribute cocaine and crack, Harris reaffirmed that no one had threatened him in any way to force him to plead guilty and that no promises, other than the promises in the plea agreement, had been made to get him to plead guilty. (Id. at 14.) In addition, Harris answered in the affirmative when the Court asked him "[whether] the total amount of crack cocaine that [he] distributed and possessed with intent to distribute or conspired to distribute was more than 1.5 kilograms of crack." (Id. at 14.) Harris did not raise any dispute as to the amount of drugs involved in the conspiracy and agreed to in the plea agreement. Nor did Harris contest the stipulated amount at any time during the plea allocution.

Harris now claims that he never possessed 1.5 kilograms of crack cocaine (Harris Mem. at 3), and that "[t]he guidelines do not permit the District Court to hold the Petitioner responsible for a specific quantity of drugs unless the court can conclude that the Petitioner is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the Petitioner is being held responsible." (Id. at 3-4.)

Harris misunderstands the test involved in a conspiracy charge. The test is not how much crack cocaine the defendant sold or possessed, but the amount sold or possessed by the members of the conspiracy that was foreseeable to the defendant. Harris affirmed on the record at the plea hearing that more than 1.5 kilograms was indeed the amount of crack cocaine involved in the conspiracy. (Plea. Tr. at 14). Nothing in the record supports Harris's claim that his counsel "coerced" him to stipulate to 1.5 kilograms of crack cocaine, or that Harris disagreed with the stipulated drug amount, or

7

that he did not understand the implications of the stipulation. Harris has provided no evidence that supports his allegations and overcomes his sworn statements at the plea allocution. Counsel's performance more than met the "objective standard of reasonableness" under Strickland, and certainly did not prejudice Harris's defense, as required for an ineffective assistance of counsel claim.[2] Strickland, 466 U.S. at 688, 692. Thus, Harris's first ineffective assistance of counsel claim is without merit.

### B. Counsel Failed to Request Downward Departure for Extraordinary Family Circumstances

Harris next argues that his counsel was ineffective and deficient for failing to seek a downward departure at sentencing on the basis of his family circumstances. (Harris Mem. at 11.) Although Harris and the Government agreed in the plea agreement that neither a downward nor upward departure was warranted and neither party would seek such a departure from the Stipulated Sentencing range with the exception of an additional one-level reduction for acceptance of responsibility (Plea Agmt. at 4), Harris now contends that counsel's failure to seek a departure "prejudiced [him] and caused [him] to be sentenced to 188 months when in fact, [he] could have received a Downward Departure based on his extraordinary family circumstances." (Harris Mem. at 16.)

Section 5H1.6 of the Guidelines states, in pertinent part, "In sentencing a defendant . . . , family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. A district court may depart on the basis of family circumstances "only in exceptional circumstances," such as where

---

[2] Far from being ineffective, counsel secured a plea agreement with significant benefits to Harris. Pursuant to the plea agreement, Harris avoided the imposition of a mandatory minimum of twenty years' imprisonment due to the Government's agreement not to file a Prior Felony Information.

a family is "uniquely dependent on the defendant's ability to maintain existing financial and emotional commitments." United States v. Faria, 161 F.3d 761, 762 (2d Cir. 1998) (per curiam); see also United States v. Sprei, 145 F.3d 528, 534 (2d Cir. 1998) (citations omitted) ("The presence of a hardship resulting from imprisonment is . . . ordinarily not enough to warrant a departure.").

At the time of sentencing, Harris had two children, ages 6 and 8, who were residing not with Harris but with their mother, Sabrina Kelly, in Bronx County, New York. (Harris Mem. at 14-15 (citing Presentence Investigation Report ("PSR"), attached as Ex. AA to Harris Mem., ¶¶ 101, 103).) Harris reported to the Probation Office that Ms. Kelly was suffering from an advanced stage of uterine cancer and was not expected to survive.[3] (Id. at 14.) Harris reported being distraught over the quality of care for his children because of their mother's illness and emotional instability, and "fearful that the possibility of their placement into foster care will cause him to lose all contact with them." (Id.) Harris further stated that there were no relatives who were in a position to care for his daughter and son, and that he was "overwrought with concern over their safety and well-being." (Id.) According to Harris, his family circumstances warranted a downward departure and counsel was deficient for failing to make that request.

Undoubtedly, Harris's imprisonment has caused a hardship on the lives of his children. However, at the time of sentencing, Harris's family circumstances did not rise to the level of exceptional or extraordinary family circumstances required for a downward departure. See United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992) ("Disruption of the defendant's life, and the concomitant difficulties for those who

---

[3] At the time of sentencing, Ms. Kelly was refusing all medical treatment. (Id.)

depend on the defendant, are inherent in the punishment of incarceration."). Although it is natural for a father to be concerned about the welfare of his children, family ties alone do not warrant a downward departure for family circumstances under U.S.S.G. § 5H1.6. Harris made no showing to the Probation Office or at sentencing, and he makes no showing now, that his family was uniquely dependent on him for financial and emotional support.[4] Nevertheless, the Court was aware of the hardship that Harris's incarceration would cause. (Transcript of Feb. 8, 2001 Sentencing Hearing ("Sent. Tr.") at 19.) A <u>sua sponte</u> departure to avoid the children being placed in foster care was not available to the Court in view of Harris's ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). Accordingly, Harris was not prejudiced by his counsel's failure to request a downward departure on the basis of Harris's family circumstances.

Lastly, the plea agreement provided that Harris would not seek any departure from the stipulated sentencing range, other than a request for a one-level reduction in offense level pursuant to U.S.S.G. § 3E1.1(b)(2). If Harris's counsel had moved for a downward departure based on his family circumstances, Harris would have been in breach of the plea agreement, and such a breach would have enabled the Government to declare the plea agreement void and proceed to trial for conspiracy to distribute and possess with intent to distribute a much larger amount of crack. A breach of the plea agreement would have also enabled the Government to file a Prior Felony Information,

---

[4] Harris was no longer living with his children at the time of his arrest, nor did he indicate that he was their sole provider. Thus, Harris's family circumstances are unlike those presented in cases where the Second Circuit has upheld downward departures based on family circumstances. <u>See, e.g.</u>, <u>United States v. Johnson</u>, 964 F.2d 124, 129-30 (2d Cir. 1992) (defendant was the sole adult available to raise four young children, including an infant); <u>United States v. Alba</u>, 933 F.2d 1117, 1122 (2d Cir. 1991) (defendant worked at two jobs to support his wife, two children, grandmother and disabled grandfather who depended on the defendant's physical strength to help him get in and out of his wheelchair).

10

which would have exposed Harris to a mandatory prison sentence of twenty years. Accordingly, Harris cannot make a showing that his counsel's failure to request a departure based on his family circumstances was objectively unreasonable or prejudicial under Strickland. As such, this ineffective assistance of counsel claim is denied.

### C. Counsel Failed to Request Downward Departure for Extraordinary Physical, Mental, and Emotional Circumstances

Harris next argues that his counsel was ineffective and deficient for failing to seek a downward departure based on his "mental, emotional and physical condition because of Petitioner's extraordinary situation faced by Petitioner as a baby and youth." (Harris Mem. at 18.) Harris contends that counsel's failure in this regard prejudiced him by "causing the Petitioner to be sentenced to 15 years and 8 months in Federal Prison." (Id. at 19.)

Section 5H1.4 of the Sentencing Guidelines states, in pertinent part:

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S.S.G. § 5H1.4. Generally, the standard for a downward departure based on a defendant's physical condition is not met unless a defendant can show that the Bureau of Prisons cannot accommodate his medical condition. See United States v. Altman, 48 F.3d 96, 104 (2d Cir. 1995) (finding no "extraordinary physical impairment" where district court found that "the Bureau of Prisons would be fully able to monitor [the defendant's] health").

Harris's ailments at the time of sentence did not rise to the level of an "extraordinary physical impairment." Although Harris contends that he suffered from

11

multiple physical ailments, he did not show that the Bureau of Prisons was incapable of accommodating his medical conditions. Harris's physical conditions were documented in the Presentence Investigation Report, and the Court was fully aware of them at the time of sentencing. Counsel's failure to raise Harris's conditions did not prejudice Harris in any way because the Court would have departed <u>sua sponte</u> if it believed that a downward departure was warranted. <u>See</u> <u>McEwan v. United States</u>, 279 F. Supp. 2d 462, 465 (S.D.N.Y. 2003) ("Had counsel explicitly requested a downward departure on the grounds petitioner raises, this Court would have denied that request, since there was no showing then and no showing now that the Bureau of Prisons is not fully equipped and capable of ministering to petitioner's medical needs."). As such, Harris's claim of ineffective assistance of counsel for failure to seek a downward departure based on his physical condition satisfies neither prong of the <u>Strickland</u> test.

Harris's claim that his counsel was ineffective because she did not argue for a downward departure based on the mental and emotional abuse he suffered as a child is also without merit. "Mental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted, except as provided in [U.S.S.G. § 5K2]." U.S.S.G. § 5H1.3. The Second Circuit has held that "in extraordinary circumstances . . . district courts may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense." <u>United States v. Rivera</u>, 192 F.3d 81, 85 (2d Cir. 1999). Here, however, Harris seemingly overcame his unfortunate family circumstances as a child. Under the tutelage of his grandmother, Harris showed considerable promise in high school and during his two-year enrollment at SUNY-New

12

Paltz. In view of these accomplishments, it seems highly unlikely that a downward departure was justified. Accordingly, Harris's counsel cannot be found to have been ineffective in failing to attempt to develop the factual background necessary to make such a request.

**D. Counsel Failed to Contest the District Court's Jurisdiction over Harris**

Harris's fourth claim is that his counsel rendered ineffective assistance because she failed to contest the Court's jurisdiction over him. Harris contends that the Court "lacked jurisdiction to arrest, try, convict and pass sentence upon him because the United States does not have legislative or territorial jurisdiction over the area he was arrested." (Harris Supp. Br. at 21.) He argues that "jurisdiction of offenses which are cognizable at Common Law resides in the State courts alone." (Id. at 22-23). Harris further states that the Court lacked personal jurisdiction over him "because he is a sovereign citizen of the State of New York" and he is "properly defined under United States Code as a 'non-resident alien,' not subject to the laws of the corporate United States." (Id. at 22, 26.)

Harris's claims are without merit. Conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine and 50 grams and more of "crack," in violation of 21 U.S.C. § 841, constitutes a federal offense subject to federal jurisdiction under Congress's Commerce Clause power. See, e.g., United States v. Goodwin, 141 F.3d 394, 399 (2d Cir. 1997) ("We have repeatedly held that the Controlled Substances Act [21 U.S.C. § 801 et seq.] concerns an obviously economic activity substantially affecting interstate commerce, namely, narcotics trafficking.").

Harris subjected himself to the penalties imposed by this Court when he conspired to distribute and possess with intent to distribute cocaine and crack cocaine in the

13

Southern District of New York, specifically Bronx County. As such, this Court possessed subject matter jurisdiction and personal jurisdiction over Harris, and an objection to this Court's jurisdiction over Harris would have failed. Counsel was not objectively unreasonable in failing to raise such a frivolous and unfounded defense. Accordingly, because Harris cannot show that counsel was deficient, nor can he show that he was prejudiced under <u>Strickland</u>, his fourth ineffective assistance of counsel claim is denied.

### III.     Harris's Rule 9(a) Motion

Harris moves the Court "to request all entities participating in the above captioned matter to prove their corporate existence, solvency, and capacity to sue or be sued according to Federal Rule of Civil Procedure 9(a)." (Harris's Rule 9(a) Mot. at unnumbered first page.) Harris contends that "[f]ailure to provide the adverse party with this information self-impeaches and self-invalidates every action, statement, writing, or testimony of each attorney or official in entirety." (<u>Id.</u>) In opposition, the Government asserts that Harris provides no basis for relief under Rule 9(a).

Rule 9(a) provides, in pertinent part:

> It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party, except to the extent required to show the jurisdiction of the court.

Fed. R. Civ. P. 9(a). Harris committed a crime against the United States when he violated, <u>inter alia</u>, 21 U.S.C. § 841. As stated above, the offense took place in Bronx County, New York, which is located in the Southern District of New York. As such, the Federal Government possessed jurisdiction to prosecute Harris in the Southern District of New York. It is not necessary that the Government prove its capacity to sue because this

Court's jurisdiction over Harris has already been established. Thus, Harris's motion pursuant to Rule 9(a) is denied.

**CONCLUSION**

For the reasons stated above, Harris's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and his motion pursuant to Rule 9(a) of the Federal Rules of Civil Procedure are hereby dismissed. In addition, because Harris has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue, see 28 U.S.C. § 2253(c)(2); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000); Soto v. United States, 185 F.3d 48, 51-53 (2d Cir. 1997), and the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445 (1962).

IT IS SO ORDERED.

Dated: New York, New York
August 10, 2005

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order sent to:

*For Pro Se Petitioner*:

Troy Harris
Reg. No. 48769-054
F.C.I. Schuylkill
P.O. Box 759
Minersville, PA. 17954-0759


*Counsel for Respondent*:

David N. Kelley, United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
Attn:   Marcia S. Cohen, A.U.S.A.
Tel:    914-993-1902
Fax:    914-682-3392